Dear Mr. Wells:
On behalf of the Rapides Parish Police Jury, you have requested the Attorney General's opinion on the authority of the Parish to create a beaver bounty program whereby the Police Jury will pay licensed trappers a bounty on beavers that are trapped/killed in Rapides Parish. As will be more fully discussed herein, it is the opinion of this Office that the Rapides Parish Police Jury may authorize a beaver control project under which it compensates licensed trappers for each beaver caught in the Parish.
The need to control the beaver population in rural parts of the State is well-recognized. As indicated in La. Atty. Gen. Op. 95-92:
 the damage caused by the beaver to the state's natural drains, drainage canals, ditches, culverts, streams and waterways poses serious impediments to flood and mosquito control, navigation and drainage. It also adversely affects the parish's finances and the health, safety and welfare of its citizenry.[1] *Page 2 
Furthermore, La.R.S. 33:1236 provides police juries and other parish governing authorities with the power to regulate their own governments and to provide for the safety and welfare of its constituents. More specifically, La.R.S. 33:1236 provides, in pertinent part:
 The police juries and other parish governing authorities shall have the following powers:
 (1) To make regulations for their own government.
 (2)(a) To regulate the proportion and direction, the making and repairing of the roads, bridges, causeways, dikes, dams, levees and highways when, in the opinion of the police jury, such work will further the best interests of the parish and the parish road system;
 * * * (c) The police juries may, upon request of the governing authority of any incorporated municipality, perform all or any part of the repair, maintenance and care of roads, streets, alleys, bridges and culverts and other drainage facilities, situated within and under the jurisdiction of such incorporated municipality, and may expend for such purposes any funds made available to them for road purposes . . .
 * * * (3) To regulate the clearing of the banks of rivers and natural drains; for the clearing of the banks of the Mississippi River and all other navigable streams and natural drains for the purpose of securing a free passage for boats and other water crafts, and for logs and timber . . .
 * * * (13) To construct and maintain drainage, drainage ditches, and drainage canals; to open any and all drains which they may deem necessary and to do and perform all work in connection therewith; to cut and open new drains, ditches and canals . . . to allocate, use and expend the general alimony of the parish for any of the above purposes . . . and to construct any works and do any and all things necessary to effect proper drainage and carry this Paragraph into effect, . . . Police juries shall open all natural *Page 3 
drains which they deem necessary in their respective parishes and shall perform all work connected therewith, which they may deem necessary to make the opening of natural drains effective. They may perform all other acts necessary to fully drain all the land in their respective parishes and maintain such drainage when established. This Paragraph is intended to furnish additional means whereby parishes in the State of Louisiana may accomplish the objects and purposes herein referred to, and shall be liberally interpreted. [Emphasis added.]
Thus, the Legislature has provided police juries with comprehensive authority to maintain natural drains, culverts, streams, ditches, and canals, including the power to expend funds for such purposes. It is therefore the opinion of this Office that the Rapides Parish Police Jury has the authority to pay licensed trappers a bounty on beavers that are trapped/killed in Rapides Parish because such trapping is clearly in furtherance of these maintenance activites.[2]
In your opinion request you note the hesitation of the Police Jury to engage in such a program since Rapides Parish is not one of the listed parishes authorized to participate in the beaver pilot program created by La.R.S. 3:3032. This statute, added by Acts 1991, No. 979, § 1 of the Louisiana Legislature, authorizes the governing authorities of East Carroll, West Carroll, Morehouse, Madison, and Richland Parishes to create a pilot program for the purpose of "explor[ing] the benefits of offering a bounty on beaver in order to control the beaver population and the damage caused by beaver."[3] However, it is important to note that this pilot program was authorized under the jurisdiction of, and in cooperation with, the Louisiana Department of Agriculture and Forestry.[4]
In fact, a percentage of the bounty offered under the program is to be paid by the State.[5]
As such, it is the opinion of this Office that nothing in La.R.S. 3:3032
was intended to prohibit other parish governing authorities from regulating their own governments under La.R.S. 33:1236. Rather, the beaver pilot program authorized under Title 3 of the Louisiana Revised Statutes is intended only to provide the Department of Agriculture and Forestry with the necessary authority to carry out its powers and duties under that title and to allow the State to partly fund the program. The conclusion that the Rapides Parish Police Jury has the authority to pay licensed trappers a bounty on trapped and killed beavers under La.R.S. 33:1236, and that La.R.S. 3:3032 does not limit this authority is supported by La. Atty. Gen. Op. 95-92.[6] However, we also note that *Page 4 
because Rapides Parish is not part of the pilot program authorized under La.R.S. 3:3032, the Parish is not entitled to reimbursement from the State for a share of the bounty. Finally, it is important to note that nothing in this opinion is intended to authorize any person or entity to trap or kill beavers without the proper licenses or permits as may be required by the Louisiana Department of Wildlife and Fisheries under Title 56 of Louisiana's Revised Statutes.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
 Yours truly, JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 By: __________________________ Megan K. Terrell Assistant Attorney General
 JDC/MKT/tp
[1] La. Atty. Gen. Op. 95-92. See also the following excerpt from the U.S. Department of Agriculture, Animal and Plant Health Inspection Service Wildlife Services, Environmental Assessment: Reducing BeaverDamage through an Integrated Wildlife Damage Management Program in theState of South Carolina, April 2002, thus:
 Most of the damage caused by beaver is a result of dam building, bank burrowing, tree cutting, obstructing overflow structures and spillways, or flooding . . . Beaver activities also destroy habitat types (e.g. free-flowing water, riparian areas, and bird roosting and nesting areas) which are important to many species . . . Increased soil moisture both within and surrounding beaver flooded areas can result in reduced timber growth and mast production and an increase in bank destabilization . . . Beaver often inhabit sites in or adjacent to urban/suburban areas and cut or girdle trees and shrubs in yards, undermine yards and walkways by burrowing, flood homes and other structures, destroy pond and reservoir dams by burrowing into levees, gnaw on boat houses and docks, and cause other damage to private and public property. Additionally, roads and railroads may be damaged by saturation of the roadbed from beaver flooding or by beaver burrowing into the banks that comprise roadbeds and railbeds. Beaver also cause an assortment of damage such as . . . interfering with irrigation systems and water level control structures; and washouts of ponds and levees . . . Beaver damming activity also creates conditions favorable to mosquitoes and can hinder mosquito control efforts or result in population increases in these insects . . . Id. at 1-4 — 1-6 (internal citations omitted).
[2] La.R.S. 33:1236; See also, La. Atty. Gen. Op. 95-92 ("the Police Jury has broad and sweeping powers with regard to the maintenance and clearing of natural drains, culverts, streams, ditches and canals. It is our opinion that this authority clearly extends to the implementation of, and participation in, a beaver control pilot program.").
[3] La.R.S. 3:3032(A).
[4] Id.
[5] La.R.S. 3:3032(B)("[t]he bounty offered shall total fifteen dollars for each pelt, ten dollars to be paid by the state . . . and five dollars to be paid by the parish governing authority."
[6] This opinion stated that "[w]hile Paragraph B [of La.R.S. 3:3032] authorizes the Police Jury to pay a $5.00 bounty, we do not construe this provision to constitute a ceiling or limitation upon the financial participation of the Police Jury," and ultimately concluded that the Madison Parish Police Jury could participate in a beaver control project under which it compensates trappers a total of $10.00 for each beaver captured. La. Atty. Gen. Op. 95-92.